J-A31037-17

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| B.S. | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| | : | |
| S.P. | : | |
| | : | |
| Appellant | : | No. 394 EDA 2017 |

Appeal from the Order December 21, 2016
In the Court of Common Pleas of Lehigh County Civil Division at No(s):
No. DR--14-01312,
PACSES 141114817

BEFORE:   PANELLA, J., OLSON, J., and STEVENS*, P.J.E.

MEMORANDUM BY STEVENS, P.J.E.:                **FILED FEBRUARY 22, 2018**

Appellant, S.P. ("Father"), appeals from the order entered in the Court of Common Pleas of Lehigh County denying in part and granting in part his exceptions to the court's March 14, 2016, order of support awarding child support and alimony *pendente lite* (APL).[1]  Chief among Father's several claims on appeal is that the court erroneously granted the petition of Appellee, B.S. ("Mother"), to modify a prior support order when she failed to

---

[1] From our review of Father's appeal, we understand it to challenge the trial court's order only with respect to the child support obligations it assigns.  To the extent Father intended his appeal to challenge the trial court's award of APL, as well—and we do not discern such an intent—we lack jurisdiction to consider such an issue.  **See Calibeo v. Calibeo**, 663 A.2d 184 (Pa. Super. 1995) (order for either spousal support or alimony *pendente lite* is interlocutory and not appealable until all economic claims have been resolved).

---

\*   Former Justice specially assigned to the Superior Court.

demonstrate a material and substantial change in circumstances had occurred since entry of the order. We affirm.

The trial court aptly summarizes the factual and procedural history of the case:

> [Defendant/Appellant] Father, [S.P.], and [Plaintiff/Appellee] Mother, [B.S.], were married in India on March 20, 2005. Father is 41 years of age, born on October 1, 1975. Mother, [B.S.], is 33 years of age, born February 1, 1983. Together, they resided in [the marital residence]. There are two children born to the marriage, [a boy], age ten, and [a girl], age nine.
>
> ***
>
> On August 8, 2014, Mother filed a Complaint for spousal and child support. On August 18, 2014, Father was served with the Complaint at the Domestic Relations Office. The following day, Mother withdrew her Complaint for support.
>
> On April 1, 2015, Mother filed a Complaint for child and spousal support. Father was served with the Complaint on April 6, 2015. A conference was held on May 18, 2015. . . . An Interim Order was entered after a conference . . . in the amount of $1,436.99 per month for child support based upon the court's determination that Mother's monthly net income is $4,590.99 or $1,067 weekly and Father's monthly net income is $4,698.31 or $1,093 weekly. Mother's spousal support complaint was dismissed as no award was warranted based upon her earnings.
>
> At that time, Mother worked as a Software Tester, a contract employee, of Agreeya Solutions at Deloitte of Folsom, California; the contract ended May 30, 2015. She has a Bachelor's degree in Computer Application. Mother pays $650 monthly for personal health insurance for the entire family. Father was added June 1, 2015. Father is the sole owner and employee of Lehigh Innovations, Inc. He provided his own income tax return but not that of the business. Therefore, the Conference Officer attributed a monthly earning capacity for him based upon his monthly expenses of $5,984.00.

The parties were conflicted as to whether Father resided at the marital residence. Mother was found to be more credible. No agreement was reached; a hearing was scheduled.

On June 1, 2015, Father filed a Petition for Modification of an Existing Support Order. He alleged that he was currently residing in the marital residence and paying related expenses.

A hearing [took place] before Hearing Officer Betz . . . on July 29, 2015, . . . HO Betz . . . recommended an order for $914.00 monthly for child support, based upon Mother's net monthly income of $4,757.00 or $1,106 weekly and Father's net monthly income of $3,852.00 or $895 weekly.

At that time, Father was unemployed. His income was corroborated with a 2014 Federal Tax Return, with $24,584 annual income, and an IRA distribution of $49,480.00, $33,480.00 of which was rolled over into another retirement account. Father generates income from his employment as well as from the profits derived from the operation of his corporation, a Sub S Company. He did not report any information on his own 2014 Federal Tax return as to the operation of the business nor did he provide a Profit and Loss Schedule.

HO Betz stated that it was disturbing to him that Father testified that he is "currently on an extension for 2014 to provide the financial information associated with the operation of the company." Ultimately, largely due to the lack of corroborating documentation as to the income or expenses of the corporation, Father was assessed an earning capacity of $30.00 per hour with a net monthly income of $3,852.00 or $895 weekly.

HO Betz concluded that Mother was entitled to spousal support. Nevertheless, after completing the calculation for spousal support that resulted in a negative number, he concluded that spousal support was not financially warranted.

Although Mother testified that she provided for the health insurance for the family at a substantial cost, she failed to provide an insurance card or any documentation of same to confirm the expense of the coverage. Therefore, the HO did not consider it as part of the calculation.

[HO Betz authored a recommended support order on August 13, 2015, incorporating these findings].

[Mother filed] Support Exceptions [to the August 13, 2015, recommended Order] on August 24, 2015, requesting credit for the health insurance that she provided for the family. [She withdrew] the exceptions . . . on September 3, 2015.

Mother's Petition for Modification. On September 3, 2015, Mother filed a Petition for Modification of the August 13, 2015, Order. Paragraph 2 of her Petition reads: "Petitioner is entitled to reinstatement because of the following material and substantial change in circumstance: the Health Insurance Premium Amount, $653.37—like before."

A conference was held on November 17, 2015, before [the same hearing officer as before]. At the conference, medical insurance coverage was established at $653.37 and child care costs of $279.30 weekly. At the time of the conference, Mother was employed as a contractor. Mother's income is based upon her pay of $45 per hour at full time. At the time of the conference, Father was unemployed and was attributed with an earning capacity as established in the August 13, 2015, Order.

Mother's Alimony Pendente Lite (APL). On February 3, 2016, Mother filed a Praecipe for [APL] which was Count 1 of the Counterclaim in the February 3, 2016, Answer and Counterclaim in Divorce filed [in the Court of Common Pleas of Lehigh County].

Hearings were held on January 12, 2016, and February 11, 2016. On March 14, 2016, HO Betz recommended a [four-phase support order encompassing Father's varying support obligations effective from September 3, 2015 to December 3, 2014, December 4, 2015 to December 31, 2015, January 1, 2016 to February 2, 2016, and February 3, 2016 forward]. The four-phase order was due to the multiple petitions, the different filing dates of the petitions, the changing incomes of Mother and of Father, the changing expenses of health insurance, child care, and, finally, the mortgage deviation.

Trial Court Memorandum Decision, 12/20/16 at 1-5.

On April 4, 2016, Father filed his "Child Support and Alimony *Pendente Lite* (APL) Exceptions[.]"  By Order dated December 20, 2016, the trial court reduced Father's arrearages by $94.62—in acceptance of Father's exception to the amount of the health insurance expense that was attributable to the children—but otherwise made final the interim Order of Support of March 14, 2016.  This timely appeal followed.

Appellant raises the following issues for our consideration:

I. **WHETHER THE TRIAL COURT ERRED IN FINDING THAT A MATERIAL AND SUBSTANTIAL CHANGE IN CIRCUMSTANCE OCCURRED BETWEEN THE ENTRY OF THE RECOMMENDED ORDER OF AUGUST 13, 2015, AND THE FILING OF A SUBSEQUENT PETITION TO MODIFY ON SEPTEMBER 3, 2015, WHICH PETITION WAS FILED PRIOR TO THE EARLIER ORDER BECOMING FINAL?**

II. **WHETHER THE TRIAL COURT ERRED IN CONCLUDING THAT A MATERIAL AND SUBSTANTIAL CHANGE IN CIRCUMSTANCES OCCURRED WHERE THE ONLY ALLEGED CHANGE NOTED WITHIN THE PETITION TO MODIFY FILED ON SEPTEMBER 3, 2015, WAS THE REQUEST TO INCLUDE HEALTH INSURANCE PREMIUMS PAID BY APPELLEE WHICH ISSUE WAS SPECIFICALLY ADDRESSED BY THE EARLIER ORDER DATED AUGUST 13, 2015?**

III. **WHETHER THE TRIAL COURT ERRED WHEN IT IMPUTED A MODIFIED INCOME TO APPELLANT/FATHER THEREBY RESULTING IN AN INCREASED CHILD SUPPORT OBLIGATION WHEN FATHER WAS ASSIGNED AN EARNING CAPACITY LESS THAN THIRTY (30) DAYS PRIOR TO THE FILING OF THE PETITION TO MODIFY, AND NO OTHER SUBSTANTIAL CHANGE IN CIRCUMSTANCE WAS ALLEGED?**

**IV. WHETHER THE TRIAL COURT ERRED IN CONSIDERING A PRIOR SUMMARY REPORT WHICH WAS NOT MADE PART OF THE COURT'S RECORD AS NEITHER PARTY NOR THE COURT MOVED FOR THE ADMISSION OF THAT DOCUMENT AT THE TIME OF THE MOST RECENT PROCEEDING?**

Appellant's brief, at 7-8.

Our standard review of child support orders is well settled:

When evaluating a support order, this Court may only reverse the trial court's determination where the order cannot be sustained on any valid ground. We will not interfere with the broad discretion afforded the trial court absent an abuse of discretion or insufficient evidence to sustain the support order. An abuse of discretion is not merely an error of judgment; if, in reaching a conclusion, the court overrides or misapplies the law, or the judgment exercised is shown by the record to be either manifestly unreasonable or the product of partiality, prejudice, bias or ill will, discretion has been abused. In addition, we note that the duty to support one's child is absolute, and the purpose of child support is to promote the child's best interests.

*Krebs v. Krebs*, 944 A.2d 768, 772 (Pa.Super. 2008) (*quoting* *Mencer v. Ruch*, 928 A.2d 294, 297 (Pa.Super. 2007)).

After a thorough review of the record, the briefs of the parties, the applicable law, and the reasoned opinion of the Honorable Michele A. Varricchio, we conclude Father's issues merit no relief. We reach this conclusion observing that the trial court opinion comprehensively discusses and properly disposes of each question presented, *see* Trial Court Opinion, filed May 31, 2017, at 1-20. As such, we affirm on the basis of this opinion.

In so doing, we particularly note the court's cogent explanation of how Mother's petition to modify was timely and properly filed, *id*, at 4-7, and how a material and substantial change in circumstances regarding Mother's

payment of the family's medical insurance supported both the hearing officer's recommended order and the court's subsequent order granting Mother's modification petition. *Id*., at 7-10. We also agree Father may not prevail on his assertion that the court improperly relied on evidence from a prior hearing that was not made part of the record during the most recent hearing with HO Betz. *Id*. at 16-20. In fact, evidence of Father's continued failure to provide documentation of his business-related income—in noncompliance with the court's order to do so—was admitted at the most recent hearing through Father's own acknowledgment, such that the court's reference to his earlier failure to present such court-ordered documentation was mere surplusage that did not alter the court's calculation of Father's income. N.T. 2/11/16, at 69-70. Accordingly, Appellant's appeal affords him no relief.

Order is AFFIRMED.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary


Date: 2/22/18

IN THE COURT OF COMMON PLEAS OF LEHIGH COUNTY, PENNSYLVANIA
DOMESTIC RELATIONS

|  |  |  |
|---|---|---|
| ▰▰▰▰▰▰▰▰▰ | ) | |
| Plaintiff/Appellee | ) | |
| | ) | No. DR-14-01312 |
| vs. | ) | |
| | ) | |
| | ) | PACSES No. 141114817 |
| ▰▰▰▰▰▰▰▰▰ | ) | |
| Defendant/Appellant | ) | |

**Pa. R.C.P. 1925 (a) Statement**

AND NOW, this 29th day of May, 2017, the undersigned enters the following statement pursuant to Pennsylvania Rules of Appellate Procedure 1925(a):

On December 21, 2016, this Court entered an Order denying in part and granting in part the *Child Support and Alimony Pendente Lite (APL) Exceptions* filed April 4, 2016, by ▰▰▰▰▰▰▰▰, Appellant. By Order of Court dated December 21, 2016, this Court reduced Husband's arrearages by $94.62 and affirmed and made final the interim Order of Support of March 14, 2016. On January 17, 2017, Appellant timely filed a Notice of Appeal to the Superior Court of Pennsylvania at Docket Number 394 EDA 2017 from the December 21, 2016, Order of Court. By Order of Court dated January 20, 2017, Appellant was directed to file a Concise Statement of Matters Complained of on Appeal within twenty-one days of the Order. On February 10, 2017, Appellant timely filed his Concise Statement of Matters Complained of on Appeal.

By Order of Court dated February 23, 2017, the Pennsylvania Superior Court issued a Rule to Show Cause "as to the appealability of the of the APL portion of the order." On March 3, 2017, Appellant filed his Response to the Rule to Show Cause. By Order of Court dated March 6, 2017, the Pennsylvania Superior Court discharged the Rule to Show Cause and

Ordered that "only the portion of the order with regard to child support will be referred to the panel assigned to decide the merits of this appeal." This Court entered an Order of Court on March 6, 2017, directing Appellant to file an Amended Concise Statement of Matters Complained of on Appeal within fourteen days of the Order taking into consideration the March 6, 2017, Pennsylvania Superior Court Order of Court. Appellant complied and filed his Amended Concise Statement of Matters Complained of on Appeal on March 21, 2017.

In his Amended Concise Statement of Matters Complained of on Appeal, Appellant raises five allegations of errors for the Court's consideration, which are reproduced here verbatim:

(1) The Trial Court erred in finding that a material and substantial change in circumstances occurred between the entry of the Recommended Order on August 13, 2015, and the filing of a subsequent Petition to Modify on September 3, 2015, which Petition was filed prior to the earlier Order becoming final.

(2) The Trial Court erred in concluding that a material and substantial change in circumstance occurred where the only alleged change noted within the Petition to Modify filed September 3, 2015, was the addition of health insurance coverage for the parties' children which issue was specifically addressed in the earlier Court Order dated August 13, 2015.

(3) The Trial Court erred when it imputed a modified income attributed to Appellant/Father thereby resulting in an increased child support obligation when Father was assigned an earning capacity less than thirty (30) days prior to the filing of the Petition to Modify, and no other substantial change in circumstances were alleged or occurred.

(4) The Trial Court erred when it failed to deviate from the support determined by the Child Support Guidelines after proper consideration of the evidence produced by Appellant/Father in support of the factors enumerated in Pa.R.C.P. 1910.16-5(b).

(5) The Trial Court erred when considering a prior Summary Report which was not part of the Court's Record specifically introduced at the time of the Hearing before Hearing Officer Betz even if that information was known to the Court at the time of the Hearing.

Appellant's Amend. Concise Stmt, ¶ (1)-(5). On December 21, 2016, this Court entered a

Memorandum Opinion in Support of the December 21, 2016, Order of Court that adequately addresses the procedural history in this matter and the reasoning for the Court's resolution of Appellant's twenty-nine exceptions to the interim Order of March 14, 2016, and the Court incorporates said Opinion herein. The Court will address the remaining allegations of error relating to the child support order in turn.

**Child Support Orders**

The main goal of a child support order "is to serve the best interests of the children through the provision of reasonable expenses." *R.K.J. v. S.P.K.*, 77 A.3d 33, 37 (Pa. Super. 2013). As in custody actions, the "main concern is for the welfare of the child." *Com. ex.rel. Scanlon v. Scanlon*, 457 A.2d 98, 102 (Pa. Super. 1983). Under the law, "Father has an absolute duty to provide for his three children financially even if it causes hardship or requires sacrifice." *E.R.L. v. C.K.L.*, 126 A.3d 1004,1006 (Pa. Super. 2015), relying on *Christianson v. Ely*, 838 A.2d 630, 638 (Pa. 2003)("Each parent has a duty which is well nigh absolute to support his or her minor children and each may have to make sacrifices in order to meet his burden.")(internal citations omitted). Additionally, "[i]n determining a parent's ability to provide support, the focus is on earning capacity rather than on the parent's actual earnings." *Reinert v. Reinert*, 926 A.2d 539, 542 (Pa.Super. 2007) (internal citation omitted).

**Standard of Review**

The standard of appellate review of child support matters has not changed; a reviewing court must continue to apply an abuse of discretion standard. *Colonna v. Colonna*, 855 A.2d 648, 652 (Pa. 2004); *Costello v. LeNoir*, 337 A.2d 866, 868 (Pa. 1975). A support order will not be disturbed on appeal unless the trial court failed to consider properly the requirements of the

3

Rules of Civil Procedure Governing Actions for Support, Pa.R.C.P. 1910.1 et seq., or abused its discretion in applying these Rules. *Nischal v. Nischal*, 879 A.2d 813, 814 (Pa. Super. 2005); *O'Callaghan v. O'Callaghan*, 607 A.2d 735 (Pa. 1992); *Barletta v. Barletta*, 485 A.2d 752 (Pa. 1985.

The "master's report and recommendation, although only advisory, are to be given the fullest consideration, particularly on the question of credibility of witnesses, because the master has the opportunity to observe and assess the behavior and demeanor of the parties." *Taper v. Taper*, 939 A.2d 969, 973-74 (Pa. Super. 2007). However, the Court is obligated to "make an independent review of the [Master's] report and recommendations to determine whether they are appropriate." *Kohl v. Kohl*, 564 A.2d 222, 225 (Pa. Super. 1989). Parties pursue only argument at the exceptions hearings and are not permitted to introduce new evidence at that time. See Pa.R.C.P. 1910.12(g); *Trembach v. Trembach*, 615 A.2d 33, 36 n.2 (Pa. Super. 1992); *Cunningham v. Cunningham*, 548 A.2d 611 (Pa. Super. 1988).

**Petition to Modify Child Support filed before the Recommended Order on August 13, 2015 Became Final**

Appellant's first issue raised on appeal is that "the Trial Court erred in finding that a material and substantial change in circumstances occurred between the entry of the Recommended Order on August 13, 2015, and the filing of a subsequent Petition to Modify on September 3, 2015, which Petition was filed prior to the earlier Order becoming final." Appellant's Amend. Concise Stmt., ¶1. At the time of argument on Father's exceptions in this matter, Father was represented by Attorney Ron Creazzo and the following exchange took place about the timeliness of the Petition to Modify.

Mr. Creazzo: Well, we're looking at his –

4

| The Court: | Betz chooses— |
| Mr. Creazzo: | —his income as of September when she filed the modification. Quite frankly, I don't know that she was even permitted to file a modification less than 30 days than the previous order came out. |
| The Court: | Is that argued in the exceptions? |
| Mr. Creazzo: | Unfortunately, not. Your Honor, I just thought of that. Sorry. |
| The Court: | So it's waived. Master Betz Decides to reassess his earning capacity. |
| Mr. Creazzo: | Right. ... |

Notes of Testimony (N.T.), 7/22/2016, at 24:10-23. Pursuant to Pa.R.C.P. 1910.12(f), "Matters not covered by exceptions are deemed waived unless, prior to the entry of the final order, leave is granted to file exceptions raising those matters." Interpreting the identical provision found in Pa.R.C.P. 1920.55 (relating to Exceptions to the Divorce Master Report), appellate courts have held that failure to take exception to the master's report results in waiver of those issues on appeal. See *Sebastianelli v. Sebastianelli*, 876 A.2d 431, 433 (Pa. Super. 2005)("Since Husband was challenging the master's conclusion, and not seeking to enforce the master's conclusion, Husband should have filed an exception in this case. His failure to do so results in waiver of the claim on appeal."); *McArdle v. McArdle*, 679 A.2d 1316 (Pa. Super. 1996); *Kohl v. Kohl*, 564 A.2d 222, 227 (Pa. Super. 1989). Thus, this Court finds that Appellant waived his first matter complained of on appeal.

Nevertheless, should the Appellate Court find that Appellant's first issue is not waived, this Court finds it meritless for the following reasons. "A party seeking to modify a support order has the burden of proving a modification is warranted and that he/she promptly filed a modification petition." *Krebs v. Krebs*, 944 A.2d 768, 774 (Pa. Super. 2005), relying on *Maddas v. Dehaas*, 816 A.2d 234, 239 (Pa.Super. 2003), *appeal denied*, 827 A.2d 1202 (Pa. 2003); 23

5

Pa.C.S.A. § 4352(e). The Court notes that 23 Pa.C.S.A. §4352 affirms that, "[a] petition for modification of a support order may be filed *at any time* and shall be granted if the requesting party demonstrates a substantial change in circumstances." (emphasis added). Here, the prior interim order based on the Hearing Officer's report was filed on August 13, 2015. Pa.R.C.P. 1910.12 (g) states that, "if no exceptions are filed within the twenty-day period, the interim order shall constitute a final order." If exceptions had not been filed in this matter, the interim order would have become a final order on Wednesday, September 2, 2015. However, Appellee filed exceptions on August 24, 2015, and served a copy on Appellant, triggering a twenty-day period for Appellant to file exceptions. Pa.R.C.P. 1910.12(f). That twenty-day period would have expired on Wednesday, September 13, 2015. Meanwhile, on September 3, 2015, Appellee withdrew her exceptions and filed instead her Petition to Modify an Existing Support Order as her exception was based upon evidence that was not presented to the hearing officer at the hearing generating the August 13, 2015 Order. Appellant did not file any exceptions to the August 13, 2015 Order.

The Court finds that under these circumstances it was not error for the Hearing Officer to consider the Appellee's Petition to Modify an Existing Support Order even though the Appellant could have arguably filed exceptions to the August 13, 2015 Order for another ten days to prevent the Order from becoming final. Here, Appellant did not file exceptions, and Appellee's exceptions were withdrawn so the Court concludes it was reasonable for the Hearing Officer to consider the interim Order finalized before Appellee filed her Petition to Modify an Existing Support Order on September 3, 2015. Moreover, the state legislature, through 23 Pa.C.S.A. §4352, permits the filing of a petition to modify support at any time. Thus the Court concludes

6

that it was not error to consider the Wife's Petition to Modify and to find a material and substantial change in circumstance had occurred as is more fully described below.

**Material and Substantial Change in Circumstance**

Appellant next alleges that "the Trial Court erred in concluding that a material and substantial change in circumstance occurred where the only alleged change noted within the Petition to Modify filed September 3, 2015, was the addition of health insurance coverage for the parties' children which issue was specifically addressed in the earlier Court Order dated August 13, 2015." Appellant's Amend.Concise Stmt., ¶2. At the beginning of the hearing on January 16, 2016, the Hearing Officer inquired into the material and substantial change in circumstance that Appellee was alleging:

Mr. Betz: In this matter, it's my understanding that we have a Petition for Modification filed by ████████ on September 3, 2015. We also have a complaint for spousal support filed by ████████ on October 23, 2016. We have a claim for alimony *pendente lite* filed by ████████ on November 20, 2015....Ma'am, when you filed your Petition for Modification you indicated in your Petition for Modification and I quote "The health insurance premium amount $653.37 like before."

Ms. Suresh: Yes, sir.

Mr. Betz: All right. So, that indicates to me that that was the amount that was in existence at the time that we were here previously.

Ms. Suresh: Yes, sir.

Mr. Betz: So, that has not changed.

Ms. Suresh: It has changed.

Mr. Betz: Did it change as of September 3rd, when you filed your petition for modification?

Ms. Suresh: No, it did not.

Mr. Betz: When did it change?

Ms. Suresh: This year, again, when the—

Mr. Betz: Starting January 1st?

Ms. Suresh: Yes. The same insurance was not continuing the following year so they asked me to find something else. So, I had to change my insurance.

Mr. Betz: Can you identify any other change in circumstance that would have occurred on or about September 3rd that would have warranted a modification?

7

Ms. Suresh:    On September 3rd, no.

Mr. Betz:    All right. We are going to start with the defendant's case-in-chief and that would be ▮▮▮▮▮▮▮▮▮▮▮.

See N.T., 1/12/2016, at 4:12-8:16. As recounted in the Memorandum Opinion of December 21, 2016, although Appellee testified at the July 29, 2015 hearing that she provided health insurance for the family at a substantial cost, she failed to provide any documentary evidence of the coverage or medical insurance expense and thus the Hearing Officer did not include the health insurance expense in the August 13, 2015 interim Order of Support. Appellee filed a Petition for Modification of an Existing Support Order on September 3, 2015, and again failed to submit supporting documentation for her payment of the health insurance, but this time Appellee had the insurance cards with her and offered to show them to the Hearing Officer. See N.T., 2/11/2016, at 128:18-129:15. Hearing Officer Betz declined to view the insurance card but credited her unopposed testimony and included the medical insurance expense in the child support calculation. This Court granted Appellant's exception to the amount of the health insurance expense that was attributable to the children and reduced the support order so that Appellant's arrearages were reduced by $94.62. Health Insurance premiums are one of the enumerated additional expenses that a Hearing Officer is to consider in the Pa. R.C.P. 1910.16-4, Calculation of Support Obligation, Formula as described further in Pa.R.C.P. 1910.16-6. The wife's more detailed account of the health insurance costs, and possession of the health insurance cards at the hearing presented the Hearing Officer with evidence upon which to base a modification of the August 13, 2015 Support Order.

Furthermore, "[p]ursuant to a petition for modification, the trier of fact may modify or terminate an existing support order in any appropriate manner based on the evidence presented

without regard to which party filed the petition for modification on the basis of a material and substantial change in circumstances." Pa.R.C.P. 1910.19 (c). The Pennsylvania Rule of Civil Procedure regarding modifications to existing support orders further states that, "if the trier of fact finds that there has been a material and substantial change in circumstances, the order may be increased or decreased depending upon the respective incomes of the parties, consistent with the support guidelines and existing law, and each party's custodial time with the child *at the time the modification petition is heard*." Pa.R.C.P. 1910.19 (c). Here, although Appellant's Petition to Modify an Existing Support Order was filed on September 3, 2015, the hearings on said Petition, Appellant's Complaint for Spousal Support filed October 23, 2015, Appellant's claim for Alimony Pendente Lite filed November 20, 2015, and Appellee's Praecipe for Alimony Pendente Lite filed on February 3, 2016, were not held until January 12, 2016, and February 11, 2016.

As was stated in the Memorandum Opinion of December 21, 2016, the four phase change to the August 13, 2015 Order of Support was "due to the multiple petitions, the different filing dates of the petitions, the changing incomes of Wife and of Husband, the changing expenses of health insurance, child care and, finally, the mortgage deviation." Mem. Op., p.5. As is stated in Pa.R.C.P. 1910.19 (a), "[t]he existence of additional income, income sources or assets identified through automated methods or otherwise may also constitute a material and substantial change in circumstances." Income includes "income derived from business" and personal perquisites, such as "entertainment and personal automobile expenses paid by a party's business, must be included in income when calculating spousal and child support." 23 Pa.C.S.A. §4302; Std. Pa. Pract. 2d §126:765; *Mascaro v. Mascaro*, 803 A.2d 1186 (Pa. 2002).

9

In *Mascaro*, the trial court had examined perquisites provided by Husband's employer including "automobiles, car phones, fuel expenses and automobile insurance" but declined to include them because both parties had benefited from them. 803 A.2d at 1194. The trial court is to consider all the pertinent circumstances and sources of income and base its decision on a petition to modify a support order on the facts as they appear in the record. See *Mackay v. Mackay*, 984 A.2d 529 (Pa. Super. 2009); *Grimes v. Grimes*, 596 A.2d 240 (Pa. Super. 1991); *Lampa v. Lampa*, 537 A.2d 350 (Pa. Super. 1988). Here from Appellant's own testimony and Exhibit H-8, the Master considered Appellant's travel and entertainment expenses, including airfare, hotels, car use, and meals listed at $50,695.00 for 2015. See N.T., 2/11/2016, at 51:4-59:4. Furthermore, Appellant's exhibits revealed to the Hearing Officer that, "he deposited nearly $19,000" from December 2015 to February 2016 into his personal bank account. Summary Report, 3/10/2016, p.5. Based upon the foregoing and the reasoning set forth in the December 21, 2017 Memorandum Opinion, the Court finds that there was no error in finding that material and substantial change in circumstances had occurred since the entry of the August 13, 2015 Order of Support. See *Samii v. Samii*, 847 A.2d 691 (Pa. Super. 2004).

Modified Income/Earning Capacity Assigned to Appellant

Thirdly, Appellant alleges that, "[t]he Trial Court erred when it imputed a modified income attributed to Appellant/Father thereby resulting in an increased child support obligation when Father was assigned an earning capacity less than thirty (30) days prior to the filing of the Petition to Modify, and no other substantial change in circumstances were alleged or occurred." Appellant's Amend.Concise Stmt.¶3. As discussed above, several changes in circumstances occurred between August 13, 2015 and the hearings before the Hearing Officer in January and

10

February of 2016. Moreover, "[i]n Pennsylvania, child support awards are made in domestic relations matters in accordance with specific statutory guidelines. ... The guidelines provide extremely detailed instructions for calculating spousal and child support awards **based on the obligor's net income from all sources....**" *Commonwealth v. Hall*, 80 A.3d 1204, 1216–17 (Pa. 2013) (emphasis added). The term income is defined as income from any source in 23 Pa. C.S.A. §4320. See also Pa.R.C.P. 1910.16-2(a). Normally, pursuant to the support guidelines, a party's monthly gross income is based upon "at least a six-month average of all of a party's income." Pa.R.C.P. 1910.16-2(a).

In the prior Order of Support, the Hearing Officer had assigned Appellant an earning capacity pursuant to Pa. R.C.P. 1910.16-2(d)(4). However, at the hearings on the parties' various petitions, including the Petition to Modify Support, the Hearing Officer was presented with new evidence about the Appellant's business income, the business' payment of many of Appellant's personal expenses, unexplained bank deposits, and the Hearing Officer's realization that "any difference between the amount he billed his customers for his services and the amount that he paid himself from his business was not taken into consideration" in the prior Order of Support despite Appellant's testimony that he paid himself $30 an hour while the S-Corp received $83 an hour for his work. See Summ. Report, 3/10/2016, at p.4. After seeing that the figures in Appellant's bank account were "wildly inconsistent" with his testimony regarding his current rate of compensation, and his determination that the Appellant lacked credibility and transparency, the Hearing Officer concluded that it was appropriate to reassess the Appellant's income level based upon the gross income Appellant received from December 14, 2015 to February 9, 2016. Summ. Report, 3/10/2016, at p.5.

11

In *Childress v. Bogosian*, the Pennsylvania Superior Court found that:

Although the parties agree that Husband's Vanguard accounts are nonmarital property, Husband claims that the trial court treated these accounts differently than his other nonmarital assets, in particular, asserting that the assumptions made by the court were not supported by evidence of record and that the valuation formula it employed had no precedent, *i.e.*, did not follow the formula set forth in section 3501(a.1). To support his argument, Husband relies on *Ney v. Ney*, 917 A.2d 863 (Pa.Super.2007), contending that the trial court considered evidence outside the record when it concluded that Husband's post separation contributions had suffered a 14.5% decline in value. In *Ney*, the court used internet searches to aid in the determination of the father's income for support purposes. That type of action was not taken by the court here. Rather, the court relied on the evidence presented. Additionally, we again point out that Husband could have produced precise records showing the exact amount of losses and/or gains predicated upon the post-separation contributions he made to the Vanguard accounts. Having failed to do so, Husband cannot complain that the court abused its discretion in applying a method that would produce an equitable resolution. *See Busse v. Busse*, 921 A.2d 1248, 1260 (Pa.Super.2007) (stating that "the trial court has the authority to divide the award as the equities present in the particular case may require."). Having reviewed the record in regard to this claim, we conclude the trial court did not err in the manner it calculated the equitable distribution of the Vanguard accounts, thus, Husband's claim fails.

12 A.3d 448, 460-61 (Pa. Super. 2011). Hearing Officer Betz's valuation method for determining Appellant's income for purposes of child support may have been somewhat unusual, however, this method was resorted to because of Appellant's failure to provide documentation that would accurately demonstrate Appellant's current income level. Summ. Report, 3/10/2016, at p.4-5. This Court reviewed the Hearing Officer's calculation of Appellant's income level in its Memorandum Opinion and the Court incorporates and relies upon the reasoning therein. Mem. Op., p.7-8, 9-10. As in *Childress*, Appellant had ample time to supply the Hearing Officer with the supporting documentation that would have relieved the Hearing Officer of the necessity to resort to using the deposits in Appellant's bank account as a way to calculate Appellant's income. 12 A.3d at 461. Thus, the Court contends that it was not error to impute a modified

income to Appellant at the time of the March 14, 2016 Order of Court and Appellant's third exception is without merit.

## No Deviation from the Standard Guideline Amount

Fourthly, Father argues that the Trial Court erred when it failed to deviate from the support determined by the Child Support Guidelines after proper consideration of the evidence produced by Appellant/Father in support of the factors enumerated in Pa.R.C.P. 1910.16-5(b). The Court notes at the outset that the Hearing Officer is only required to specify in writing the reasons for deviating from the child support guidelines, if he determines that a deviation is required and is not required to discuss each of the factors as to why he did not grant a deviation. The Pennsylvania Superior Court has held, "[c]ontrary to Father's argument there is no required amount of detail for the trial court's explanation. All that is needed is that enumerated factors were considered and that the deviation is based on those considerations." *E.R.L. v. C.K.L.*, 126 A.3d 1004, 1009 (Pa. Super. 2015). Pursuant to Pa.R.C.P. 1910.16-5,

(a) Deviation. If the amount of support deviates from the amount of support determined by the guidelines, the trier of fact shall specify, in writing or on the record, the guideline amount of support, and the reasons for, and findings of fact justifying, the amount of the deviation.
Note: The deviation applies to the amount of the support obligation and not to the amount of income.
(b) Factors. In deciding whether to deviate from the amount of support determined by the guidelines, the trier of fact shall consider: (1) unusual needs and unusual fixed obligations; (2) other support obligations of the parties; (3) other income in the household; (4) ages of the children; (5) the relative assets and liabilities of the parties; (6) medical expenses not covered by insurance; (7) standard of living of the parties and their children; (8) in a spousal support or alimony pendente lite case, the duration of the marriage from the date of marriage to the date of final separation; and (9) other relevant and appropriate factors, including the best interests of the child or children.

13

Pa. R.C.P. 1910.16-5. The Pennsylvania Rules of Civil Procedure regarding child support "make clear that the amount of support as determined from the support guidelines is presumed to be the appropriate amount of support and that any deviation must be based on Rule 1910.16-4[Now Rule 1910.16-5]." *McCarty v. Smith*, 655 A.2d 563, 565 (Pa. Super. 1995)(internal citation omitted).

Upon review of the record, the transcript of the February 11, 2016 hearing and the Hearing Officer's Summary Report of March 10, 2016, it is clear that the Hearing Officer did consider the factors listed in Pa.R.C.P. 1910.16-5 (b) and in fact granted Appellant a deviation for paying the mortgage even though he is not residing in the marital residence. See Summ. Report, 3/10/2016, at p.6-8. Due to the mortgage deviation, Appellant was not required to contribute any additional sum, by way of support, effective September 3, 2015 until December 4, 2015, when Plaintiff's net monthly income figure changed. See Summ. Report, 3/10/2016, at p.6-8.

In *Ball v. Minnick* the Pennsylvania Supreme Court held that,

The trier of fact is required to consider all relevant factors and any one factor alone will not necessarily dictate that the amount of support should be other than the guideline figure. Rather, the trier of fact must carefully consider all the relevant factors and make a reasoned decision as to whether the consideration thereof suggests that there are special needs and/or circumstances which render deviation necessary. Furthermore, where the trier of fact does determine that the circumstances warrant a departure from the guideline amount, the justification for any such deviation must be explicitly set forth in writing, giving particular attention to those factors which this Court, in adopting the guidelines, has specifically deemed relevant. See Pa.R.C.P. 1910.16-4(a). General references to the effect that "all relevant factors have been considered" is wholly insufficient.

The presumption is strong that the appropriate amount of support in each case is the amount as determined from the support guidelines. However, where the facts demonstrate the inappropriateness of such an award, the trier of fact may deviate therefrom. This flexibility is not, however, intended to provide the trier of fact

14

with unfettered discretion to, in each case, deviate from the recommended amount of support. Deviation will be permitted only where special needs and/or circumstances are present such as to render an award in the amount of the guideline figure unjust or inappropriate...

648 A.2d 1192,1196 (Pa. 1994). Further, the Pennsylvania Supreme Court found that that,

there was no evidence presented which established any special obligations or special circumstances justifying an award lower than the recommended guideline figure. The trial court's primary reason for deviating from the support guidelines was that the basic needs of the children could be met by a payment of less than the guideline amount. This is an impermissible basis for deviating from the guidelines. Since the trial court considered a factor that should not have been considered in entering the support award here, an abuse of discretion is readily apparent. Moreover, as there were no additional relevant factors which would support the trial court's award, application of the above principles dictates that an award in the amount of the appropriate guideline figure should have been awarded. Accordingly, for reasons other than those articulated by the learned Superior Court, the decision of the Superior Court reversing the trial court's award is affirmed. The case is remanded for the imposition of an award in the amount of the appropriate guideline figure.

*Ball*, 648 A.2d at 1198. Here, Appellant failed to develop evidence as to his payment of the martial debts including the car loan payment, personal loan payment, and credit card expenses.[1] While Appellant introduced evidence of such debts, he did not prove to the Hearing Officer's satisfaction that they were *marital* debts as opposed to Appellant's own credit card debt accumulated after the parties' separation. See Mem. Op., p.8-9; Summ. Report, 3/10/2016, at p.8-9. Likewise, Appellant sought to introduce proof of his payment of the homeowner's association fees at the exceptions hearing, however this evidence was not before the Hearing Officer and thus could not be considered by this Court in resolving Husband's exceptions. Parties pursue argument only at the exceptions hearings and are not permitted to introduce new

___
[1] Appellant's exceptions refer to the Hearing Officer's failure to include these expenses as reasons for a deviation in the APL calculation rather than in the calculation of his child support obligation.

15

evidence at that time. See Pa.R.C.P. 1910.12(g); *Trembach v. Trembach*, 615 A.2d 33, 36 n.2; *Cunningham v. Cunningham*, 548 A.2d 611 (Pa. Super. 1988).

Here the Hearing Officer properly considered the evidence of record as to Appellant's potential entitlement to any deviation in his child support obligation and concluded that only a mortgage deviation was warranted. In *Commonwealth ex rel. Arena v. Arena*, the Pennsylvania Superior Court cautioned:

> In weighing the above evidence, it is important to remember that the purpose of a support order is the welfare of the children and not the punishment of the father. It must be fair and not confiscatory in amount, being intended to provide a reasonable allowance for support, considering the property, income and earning capacity of the father, and the station in life of the family.

223 A.2d 897, 898 (Pa. Super. 1966). The Hearing Officer's recommended four part Order of Support of March 14, 2016, was fair, intended to protect the best interests of the children and not to punish Appellant. Thus, the Court finds Appellant's fourth issue raised on appeal to be without merit.

**The Trial Court's reference to a prior summary report issued by Hearing Officer**

Lastly, Appellant argues that, "the Trial Court erred when considering a prior Summary Report which was not part of the Court's Record specifically introduced at the time of the Hearing before Hearing Officer Betz even if that information was known to the Court at the time of the Hearing." Appellant's Amend. Concise Stmt., ¶5. In this Court's Memorandum Opinion from December 21, 2016, the Court made the following references to a prior summary report authored by Hearing Officer Betz on August 13, 2015:

> HO Betz stated that it was disturbing to him that Husband testified that he is "currently on an extension for 2014 to provide the financial information associated with the operation of the company."(August 13, 2015, Summary Report, page 3.) ... In the August 13, 2015 Summary Report, the HO noted that

16

Husband had failed to bring to the hearing a general ledger and not a ledger created for litigation purposes, which would have identified his ongoing corporate expenses as well as gross income generated through the operation of his business. He noted that Husband failed to bring bank statements for the bank accounts associated with his corporation or accounts receivable invoices and receipts for accounts payable in order to accurately calculate the income generated by his corporation.... Due to Husband's failure to provide documentation in compliance with the November 17, 2015 Order of Court, as well as with the caution in the prior Summary Report, ultimately, the HO calculated Husband's income based upon bank deposits as well as Husband's expenses.

Mem. Op. at p.3, 9-10. The August 13, 2015, Summary Report by Hearing Officer Betz is part of the court record in this matter and was the basis for the August 13, 2015 Order of Court for child support. Moreover, Hearing Officer Betz in his March 10, 2016 Summary Report specifically references his August 13, 2015 Summary Report in discussing Father's second failure to provide documentation "which would paint a clear picture as to his current income level." Summ. Report, 3/10/2016, at p.4. A Hearing Officer's Report and Recommendation, although only advisory [and not evidence] is "to be given the fullest consideration, particularly on the question of credibility of witnesses, because the Hearing Officer has the opportunity to assess the behavior and demeanor of the parties." *Taper v. Taper*, 939 A.2d 969, 973-74 (Pa. Super. 2007). The information in the August 1, 2015 Summary Report came from the evidence presented by the parties and their testimony at the July 29, 2015 master's hearing which is also of record. The Hearing Officer also relied on August 1, 2015 Summary Report and Father failed to file an exception to this reference, issues not raised in exceptions are deemed waived, thus Father may have waived this issue on appeal. See *Sebastianelli v. Sebastianelli*, 876 A.2d 431, 433 (Pa. Super. 2005.

If the issue is not waived, however, the Court finds that any error in referencing the Summary Report would be harmless error. In contrast to the trial court in *Eck v. Eck*, this Court

17

was not referencing "off-the-record facts." 475 A.2d 825, 827 (Pa. Super. 1984); see also *Ney v. Ney*, 917 A.2d 863, 868 (Pa. Super. 2007)(The Pennsylvania Superior Court reversed a child support order where the Court made a determination of the Father's earnings capacity "based upon its own internet job search. There is no other evidence of record that there were suitable positions available, and that [the father] failed to apply for these positions.") While it is "well-settled that a trial court may not consider evidence outside of the record in making its determination," it is appropriate for the Court to reference materials "of record" that relied on evidence of record at the July 29, 2015 master's hearing. See *Childress v. Bogosian*, 12 A.3d 448, 460-61 (Pa. Super. 2011). Hearing Officer Betz discussed with Father during the January 12, 2016 and February 11, 2016 hearing his failure to bring appropriate documentation as described in the August 13, 2015 Order and as Father was court ordered to provide by the November 17, 2015 Order of Court.

Father testified at the January 12, 2016 hearing that in accordance with the subpoena he had brought his final 2015 business tax return dated September 10, 2016, as Exhibit H-6. See N.T., 1/12/16, at 34:7-35:13. According to Exhibit H-6, Father made a profit from the operation of his business in 2014 in the amount of $18,812.00. See N.T., 1/12/16, at 51:19-23. At the close of the hearing on January 12, 2016, Hearing Officer Betz stated:

Mr. Betz:    I'll tell you what, here's what we're going to do—...We're going to adjourn for today, the matter is going to be rescheduled for a half day hearing....If you have those statements that show proof of payment, I suggest that you present them at that time. All right.
Mr. Henry:   We will be more prepared for the next one. Understood.
Mr. Betz:    All right. Very good. For purposes of today, we are adjourned.

See N.T., 1/12/2016, at 58:13-59:7. The parties and counsel for Appellant, David Henry, Esquire appeared for a second hearing before Hearing Officer Betz on February 11, 2016. At the

18

February 11, 2016, hearing, the Father submitted a 2015 income tax return for his S Corporation as Exhibit H-8. See N.T., 2/11/2016, at 7:6-15. When testifying before the Master regarding his current employment the following exchange occurred:

Mr. Betz: So, you are telling me you have no idea how much your company generates in gross revenue per month despite the fact that you're under a contract. Is that correct?

Mr. ▮▮▮▮▮: Yes....

Mr. Betz: Do you have any bank statements from your business account here today?

Mr. ▮▮▮▮▮: I didn't bring it....

Mr. Betz: And you are telling me that this other person bought shares of the corporation?

Mr. ▮▮▮▮▮: Correct.

Mr. Betz: Okay. Do you have any corporate records that reflect that?

Mr. ▮▮▮▮▮: No. I don't have that right now....

Mr. Betz: Now, we have marked previously Husband's Exhibit 8 and you have identified that as your 2015 corporate tax return. Correct?

Mr. ▮▮▮▮▮: Correct.

Mr. Betz: Has this been filed?

Mr. ▮▮▮▮▮: This is going to be final draft copy.

See N.T., 2/11/2016, at 33:14-41:18. Father testified that the numbers on the final draft copy were accurate and correct and yet admitted later that several numbers and facts in the 2015 tax return were incorrect. See N.T., 2/11/2016, at 42:3-67:10. Father also failed to bring his 2014 or 2015 Personal Tax Return although he admitted that he was aware that he was required to bring his personal tax returns to the hearing. See N.T., 2/11/2016, at 69:7-70:12. Thus, there was ample evidence from the January 12, 2016 hearing and the February 11, 2016 hearing for the Court to conclude that Husband's failure to provide documentation in compliance with the November 17, 2015 Order of Court permitted the Hearing Officer to calculate Husband's income based upon bank deposits, rather than incomplete and inaccurate tax returns. Thus the referencing of the caution to Father in the prior Summary Report was mere surplusage and not

19

necessary to the Court's holding. Therefore, any error in the reference would be harmless error and this Court finds Father's last contention of error to be without merit.

BY THE COURT:

_Michele A. Varricchio_

Michele A. Varricchio, J.